438 F.2d 21
 UNITED STATES of America, Plaintiff-Appellee,
v.
William Paul RAGSDALE, Defendant-Appellant.
No. 30056 Summary Calendar.*
*Rule 18, 5th Cir.; see Isbell Enterprises, Inc
v.
Citizens Casualty Co. of New York, 431 F.2d 409, Part I (5th
Cir. 1970).
 United States Court of Appeals, Fifth Circuit.
 Jan. 29, 1971.
Rehearing Denied and Rehearing En Banc Denied April 1, 1971.
 
 James M. Fullan, Jr., Beddow, Embry & Beddow, Birmingham, Ala., for defendant-appellant.
 Ira deMont, U.S. Atty., D. Broward Segrest, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 William Paul Ragsdale, Sheriff of Lee County, Alabama, was prosecuted in the court below under a five-count indictment charging separate substantive violations of 18 U.S.C.A. 242 (1969). The first three counts alleged brutality toward male inmates. The fourth and fifth counts charged sexual misconduct with a female inmate. A trial by jury resulted in a verdict of guilty as to Count 1 and not guilty as to Counts 2 through 5, inclusive.
 
 
 2
 The uncontradicted evidence relative to Count 1, including the testimony of the defendant himself, disclosed the following facts. Lawrence Williams was an inmate of the Lee County jail under the custody of defendant Ragsdale. For some time Williams had been accorded a 'trusty' status which entailed both extra duties and extra privileges not allowed to other inmates. On several occasions Williams unlawfully left the jail. The government refers to these instances as escapes. The defendant sheriff classifies them as occasions on which Williams had 'run off'. Following each of the first few of these departures, Williams received lectures upon his return to the jail; on later recaptures Sheriff Ragsdale withheld certain of Williams' 'trusty' privileges. On two such occasions Sheriff Ragsdale disciplined Williams by striking him with a restraining belt. On the particular reapprehension which gave rise to the conviction now on appeal, Sheriff Ragsdale confronted Williams with a choice of procedures: Ragsdale told Williams he would either swear out a warrant against Williams for the offense of escape from custody or would administer summary punishment in the form of six strokes of the restraining belt. Williams agreed to accept the six blows, which Sheriff Ragsdale administered.
 
 
 3
 This appeal asserts two broad bases for reversal: first, that the trial court's instructions invaded the province of the jury by directing a verdict of guilt; second, that the prosecutor's misconduct, coupled, with erroneous rulings on matters of evidence, constituted an accumulation of prejudicial occurrences requiring reversal. Finding neither basis valid, we affirm.
 
 I. THE INSTRUCTIONS
 
 4
 The core of the Sheriff's complaint is that the court's instructions deprived the jury of their proper function of determining whether Sheriff Ragsdale's acts embodied the statutorily required wilfulness and intent to deprive his prisoner of a right, privilege or immunity secured or protected by the Constitution or laws of the United States. In essence he asserts that the jury could have found the choice he left to Williams involved no more than a proper concern for prison discipline among 'trustys' and that such a finding would have required the jury to acquit him on Count 1, as it did on the remaining counts.
 
 
 5
 First, we should take note of the statute involved, Section 242, which provides:
 
 
 6
 Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.[1]
 
 
 7
 Next, we must examine those parts of the court's charge which from the gravamen of the complaint. But before we deal with specifics, we would observe that the sheriff acknowledges that portions of the original charge dealing with wilfulness and intent were given in the precise language he requested. He contends error occurred because assertedly inconsistent language was used by the court, particularly when the jury returned after deliberating a little over an hour and a half and requested additional instructions on the element of intent as it applied to Count 1.[2] In pertinent part, this was the court's full response to the jury's request:
 
 THE COURT:
 
 8
 Gentlemen * * * First, a defendant comes into court under a presumption of innocence * * * Next, the Government has the burden of proof of convincing you beyond a reasonable doubt of all the material elements of the thing he is charged with. Then I further told you that the evidence was uncontradicted that some time during that period of time, at least one offense occurred as alleged. I told you that the evidence was uncontradicted that it occurred where it is alleged to have occurred and that it occurred by the defendant. I told you that the evidence is uncontradicted that he was the duly elected Sheriff of Lee County, Alabama. The evidence was uncontradicted that he was acting under the color of law of the State of Alabama when he did what the evidence is uncontradicted that he did do. * * * I told you that the evidence is uncontradicted that the defendant * * * gave the named person Lawrence Williams, also known as 'Lum' Williams, a choice, to swear out a warrant or either administer six licks with this leather strap-- that is in evidence. I told you that the evidence is uncontradicted that (this) constituted summary punishment, he had no right to give him a choice. A man has a right to due process of law, to be charged and have a trial. He had no right to give him the alternative and had no right to inflict by his own testimony the six licks. * * * An act done willfully is one which is done voluntarily and intentionally and with the specific intent to do something that the law forbids. That is to say with bad purpose to either disobey or disregard the law. As a general rule it is reasonable to infer that a person ordinarily intends all of the natural and probable consequences of his acts knowingly done or knowingly omitted. Now that does not mean he had to know in a legal way he was depriving a man of his Constitutional rights. It means that he knew what he was doing and he intended to do what he was doing. And if that did constitute a deprivation of his Constitutional rights, and if you are convinced beyond a reasonable doubt, he would be guilty of the offense charged in Court 1. Really, about all I left for your judgment, ladies and gentlemen, in Count 1, is whether you were convinced beyond a reasonable doubt that the evidence as presented to you is what happened. And if you are convinced beyond a reasonable doubt, under the uncontradicted evidence he would be guilty under Count 1. Any other question that you want to ask me?
 
 THE FOREMAN:
 
 9
 That is all, your Honor. Thank you. The Sheriff duly excepted to this supplemental charge only on the grounds that it pretermitted the question of intent. No exception was taken as to the overall fairness of the supplemental charge.
 
 
 10
 Although appellant's thorough brief cites a number of authorities, the thrust of his argument urges us to find the trial court's instructions violate Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), which reversed the conviction of a sheriff and two other law enforcement officials who beat a handcuffed prisoner to death, and Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), which reversed the conviction of a deer hunter, who had been found guilty of converting government property for picking up 84 dollars worth of empty, rusting bomb casings from a remote area which the government used as a bombing practice range.
 
 
 11
 It is urged that Screws mandated the court to give an instruction that the jury had to find more in the defendant's actions than merely a generally bad purpose. The contention is made that the judge should have instructed the jury that a conviction could be returned only if Sheriff Ragsdale acted as he did with the purpose in mind of depriving Prisoner Williams of a constitutional right. This argument has plausibility. The Screws majority, in construing the same statute under which Ragsdale was convicted, stated that the Act required the showing of an intent to deprive a person of a right which had been made specific, either by the express terms of the Constitution or the laws of the United States or by interpreting court decisions. The problem for the defendant hear and the thing that distinguishes Screws is the uncontradicted evidence, including Ragsdale's own testimony, which establishes the motive, intent and purpose of his summary punishment of this prisoner. In Screws evidence had been adduced that the Sheriff held a grudge against the prisoner he beat to death, but the executioners testified that the prisoner had reached for a gun and had resisted his detention. Thus, the proof lacked certitude as to why the reprehensible act took place. The trial court had only charged that if Screws and his accomplices used more force than was necessary to make the arrest of the prisoner, they violated the statute. The Supreme Court reversed because, they held, such an instruction stopped short of being sufficient under a proper interpretation of the statute, which was not intended to make a federal crime of every local act of police brutality. They added however, that Sheriff Screws and his cohorts need not have been thinking in terms of federal constitutional or statutory law and that the only additional instruction needed to make the charge accurate was for the judge to have told the jury:
 
 
 12
 To convict it was necessary for them to find that petitioners (Sheriff Screws, et al.) had the purpose to deprive the prisoner of a constitutional right, e.g. the right to be tried by a court rather than by ordeal. And in determining whether that requisite bad purpose was present the jury would be entitled to consider all the attendant circumstances-- the malice of petitioners, the weapons used in the assault, its character and duration, the provocation, if any, and the like. Screws, supra, 325 U.S. at 107, 65 S.Ct. at 1038.
 
 
 13
 In the case at bar the Court's instruction does not suffer from the deficiency condemned in Screws. It stated to the jury no more than the unvarnished truth disclosed by the record-- the uncontradicted proof showed that the reason Sheriff Ragsdale beat prisoner Williams was his deliberate decision that, if Williams chose to forego his constitutional right of a trial by law for the crime of escape, he, Ragsdale, would take the law into his own hands and act summarily as prosecutor, judge, jury and punisher for such crime. The statement of the Sheriff that he considered his actions a form of prisoner discipline and thus that his thoughts were free of malice was a part of the evidence which the jury heard. The instructions of the judge left them the option to believe or disbelieve what they had heard. However he correctly instructed them that if they accepted as true the evidence which established that the Sheriff strapped Williams for the crime of escape and did so as an alternative to instituting a proceeding against his prisoner for that crime according to the forms of the law, then they could infer the intent necessary to constitute a violation of 242. Screws does not condemn such a practice. Noble motives and pure thoughts cannot bar the conviction of one who admits intentional action which violates the proscriptions of a statute declaring that action criminal, and a judge can properly instruct as to what acts the statute condemns, which is the most the instructions did here.[3]
 
 
 14
 Morissette, supra, involved a charge under 18 U.S.C.A. 641 (1966), a statute which did not expressly require a showing of evil intent. The court held that such an intent was nevertheless an essential element to make the conversion of government property a crime, and further ruled that in Morissette's case no presumption of such evil intent would arise from the facts proven. The deer hunter could reasonably have believed the government had abandoned these old bomb casings. Relying on Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the Court in Morissette, held:
 
 
 15
 A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. Morissette, supra, 342 U.S. at 275, 72 S.Ct. at 256.
 
 
 16
 But, just as was Screws, Morissette is distinguishable from Ragsdale's case. The court did not incorporate in its instructions any proscribed or unreasonable presumption. The only presumption of any sort in the case sub judice which could have had bearing upon the appellate issue-- intent-- would have to be found in the instructions which permitted the jury to utilize the rational, wellestablished inference that a person ordinarily intends the consequences of his knowing acts. No exception was taken to this charge, and indeed none would have been meritorious. The judge left to the jury all that was in their province-- was the evidence they heard true. His charge, considered as a whole violated neither the spirit nor the letter of Morissette.
 
 
 17
 Another challenge raised concerning the Court's supplementary instruction struction was that it was not balanced and only made points favorable to the government. See Perez v. United States, 297 F.2d 12 (5th Cir. 1961). The Sheriff raised no objection to the instruction on this ground, so any error we find would have to be plain error within the meaning of Fed.R.Crim.P. 52(b). See United States v. Campbell, 419 F.2d 1144 (5th Cir. 1969). When we look, we see that the supplemental charge started off with the caveat that the defendant was presumed innocent and that the government had the burden of proving beyond a reasonable doubt all material elements of the charge against him. Thus, we are unwilling to hold that plain error was demonstrated.
 
 
 18
 Finally, Ragsdale asserts that the charge amounted to an affirmative instruction to find him guilty. We disagree. A trial judge in a federal court has the right to analyze and comment on the evidence and to direct and assist the jury whenever he considers it necessary in reaching a just result. His role is not limited to that of moderator or umpire. He is a vital participant in the trial and, within the limitations of his position, he is required to see that justice is done. United States v. Smith, 433 F.2d 1266 (5th Cir. 1970). His instructions advising the jury that the testimony as to the actual commission of the crime and the intent with which it was committed were uncontradicted, are literally, factually true. It was his prerogative, if not his duty, to so advise the jury. He nevertheless carefully left to them the final determination of credibility even though all the evidence was uncontradicted, and thus left to them that franchise which inheres in the jury system of pardoning even a culprit whose own testimony establishes his guilt. His instructions were not error. United States v. Blue, 430 F.2d 1286 (5th Cir. 1970); cf. United States v. Dopf, 434 F.2d 205 (5th Cir. 1970). This Circuit is firmly committed to what appears to be the universal rule, that no matter how conclusive the evidence, a court may not direct a verdict of guilt in whole or in part. United States v. Skinner, 437 F.2d 164 (5th Cir. 1971). Any such instruction would amount to plain error which would be noticed, even though not assigned. Mims v. United States, 375 F.2d 135 (5th Cir. 1967). But the record in the case at bar presents no such judicial unfairness. The judge did not tell the jury they had to find the defendant guilty. He told them that the evidence was not in conflict and, if they chose to believe it, the elements of the offense had been established. This action was free of error.[4]
 
 
 19
 II. ALLEGED CUMULATIVE ERROR FROM COURT RULINGS AND PROSECUTORIAL MISCONDUCT
 
 
 20
 The defendant contends that the entire proceedings were reversibly tainted by the accretion of a number of individual mistakes. First, he says that the court, in the hearing of the jury, ruled that the defendants had a reciprocal duty under the Jencks Act (18 U.S.C.A. 3500 (1969)) to provide the prosecution with copies of any written statements of defense witnesses and that even though the court later corrected this ruling, an inference had been left with the jury that defense counsel had been unfair with the prosecution because the U.S. Attorney said, in the presence of the jury, that all government-witness statements had been turned over to the defense. Second, objection is made to allowing evidence to be adduced related to sexual misconduct with the female prisoner named in Counts 4 and 5, in allowing evidence of the use of narcotics associated with such sexual misconduct to be adduced, and in admitting evidence that the Sheriff had been divorced from his wife (this latter objection is coupled with a suspicion that the jury might have overheard an announcement at a side bar conference that one of the grounds of divorce was violence). Third, an objection was made to allowing a deputy sheriff to testify that he had tried to locate the prisoner Williams-- apparently in an effort to explain his absence as a witness. Fourth, objection was made to the prosecutor's spontaneous action in asking the defendant to divulge the number of people he had beaten while in his custody.
 
 
 21
 All of these errors are said to have aggregated in their impact on the basic fairness of the trial. We disagree for two reasons. The indictment charged five separate offenses, all of a similar nature, to-wit: illegal mistreatment of prisoners. The defendant urged no error in the Court's action in trying all five counts together. The trial obviously could not be compartmentalized. Therefore, evidence which tended to prove the counts involving sexual misconduct was not erroneously admitted. Proof of another crime which aids in or is appropriate in establishing the crime in question would be admissible in any event. Matthews v. United States, 407 F.2d 1371 (5th Cir. 1969).
 
 
 22
 A defendant is entitled to a fair trial, not a perfect one. In the overall context of things we note that the jury acquitted Ragsdale on Counts 2 through 5. This fact reenforces our conclusion that the record, taken as a whole, demonstrated that the errors he asserts individually and collectively did not cause a miscarriage of justice. Cf. Steere Tank Lines, Inc. v. United States, 330 F.2d 719, at headnote 7 (5th Cir. 1963).
 
 
 23
 The judgment and commitment of William Paul Ragsdale is
 
 
 24
 Affirmed.
 
 
 25
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 26
 The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.
 
 
 
 [1]
 The indictment did not charge Sheriff Ragsdale acted on account of or by reason of race or color of his prisoner. The statute has been interpreted to be bifurcated so that action with a racial animus is immaterial to wilful deprivation of federally protected rights or privileges. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed.2d 1368 (1941); Miller v. United States, 404 F.2d 611 (5th Cir.1968)
 
 
 [2]
 The court's original charge contained numerous references to the issue of intent required to constitute a violation of 242 under count 1. For example:
 I have used the words 'willful deprivation of Constitutional rights', and I will define that for you. Federal statute forbids any person to willfully subject any inhabitant of any State to the deprivation of any rights, privileges or immunities secured or protected by the Constitution or laws of the United States. Before there can be a violation of this Federal statute, the evidence in the case must establish beyond a reasonable doubt that the accused did the prohibited acts willfully as charged. An act is done willfully if done voluntarily tarily and intentionally, and with the specific intent to do something that the law forbids. That is to say, with bad purpose either to disobey or disregard the law. On the other hand if the jury should have a reasonable doubt as to whether the accused acted willfully or as to any other essential element of the offense charged as stated in the instructions with reference to any court, the jury should acquit the accused with reference to such count or all counts. Now I have told you that intent was an essential element. Intent may be proved by circumstantial evidence. Indeed, it can rarely be established by any other means-- it is something in the mind. * * * As a general rule, it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the evidence in the case leads the jury to a different or contrary conclusion, the jury may draw the inference and find that the accused intended all the natural and probable consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly omitted by the accused. Now with reference to the first Count-- I might say this to you, when I make reference to any of the facts in the case, I must caution you that you are the sole judges of the facts. Any comment I have to make with reference to the facts you are free to disregard. * * * With reference to Count 1, the evidence is uncontradicted that during the period of time set out in the indictment at the place set out in the indictment, that this defendant was the duly elected Sheriff of this County, and that he was acting under the law as charged there, and that he did on at least one occasion willfully assault and strike Lawrence Williams. He himself says that he gave him the choice of issuing a warrant or taking six licks. He had no right to do that. And it constituted summary punishment, which he had no right to impose. And it was a deprivation of his rights. And so, if you are convinced beyond a reasonable doubt from the uncontradicted evidence that you have heard, then he is guilty on Count 1.
 The initial charge also included the following instructions in the exact language requested by the defendant:
 I charge you, members of the jury, that with respect to the crime charged in Count 1 of the indictment, specific intent must be proved by the government before there can be a conviction and you must be satisfied beyond a reasonable doubt that William Paul Ragsdale had the purpose and intent to deprive Lawrence Williams of a constitutional right before you would be authorized to convict William Paul Ragsdale under Count I of the indictment. I charge you, members of the jury, that an act is done 'willfully' if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law. I charge you, members of the jury, that with respect to the offenses charged in this indictment specific intent must be proved before there can be a conviction. A person who knowingly does an act which the law forbids or knowingly fails to do an act which the law requires to be done, intending with bad purpose either to disobey or to disregard the law, may be found to act with specific intent. An act or failure to act is 'knowingly' done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. I charge you, members of the jury, that in every crime there exist a union or joint operation of act and intent. The burden is always upon the government to prove both act and intent beyond a reasonable doubt.
 The charge concluded with this usual and correct admonition:
 Consider all my charges together, don't single out just one, but put everything I said together with reference to all of The same thing is true with reference to intent-- with regard to all counts, including the first count, which has to do with Mr. Williams.
 
 
 [3]
 Similar instructions defining the legal effects of actions but leaving credibility of the proof to the jury have been approved in actions under the Anti-Racketeering Act, 18 U.S.C.A. 1951, (1970). Nick v. United States, 122 F.2d 660 (8th Cir. 1941), cert. denied 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550 (1941); Hulahan v. United States, 214 F.2d 441 (8th Cir. 1954), cert. denied 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675 (1954); United States v. Varlack, 225 F.2d 665 (2nd Cir. 1955); United States v. Lowe, 234 F.2d 919 (3rd Cir. 1956), cert. denied 352 U.S. 838, 77 S.Ct. 59, 1 L.Ed.2d 56 (1956); and United States v. Green, 246 F.2d 155 (7th Cir. 1957)
 
 
 [4]
 Here, the court did not mistake any element of the proof which had been adduced such as occurred in Edwards v. United States, 286 F.2d 681 (5th Cir. 1960) or United States v. Martin, 434 F.2d 275 (5th Cir. 1970)