**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth L. MUSGRAVE and Jack
Bryant, Defendants-Appellants.**

**No. 29511.**

United States Court of Appeals,
Fifth Circuit.

June 21, 1971.

Rehearing Denied July 26, 1971.

A. L. Rhodes, Abilene, Tex., J. Edwin Smith, Houston, Tex., for Kenneth L. Musgrave.

Tom Webb, Webb & Stokes, San Angelo, Tex., Arthur Mitchell, Mitchell, Gil-

bert & McLean, Austin, Tex., for Jack Bryant.

Seagal V. Wheatley, U. S. Atty., Wayne F. Speck, Asst. U. S. Atty., and Andrew Gary, Sp. Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

DYER, Circuit Judge:

Kenneth L. Musgrave, Jack Bryant, Marshall Womack [1] and Homer E. Koon, Jr., were charged in a seven-count indictment with violations of 18 U.S.C.A. §§ 371,[2] 657,[3] and 1006.[4] The genesis of these alleged violations was a transaction involving two loans made to Womack and Koon by the Home Savings Association of Odessa, Texas.

The first count charged Musgrave, Bryant, Womack, and Koon with conspiring to defraud the federally insured Association. The second count charged that Musgrave, aided and abetted by Womack, fraudulently prepared and submitted grossly inflated appraisal reports on real property securing the loans. The fourth count charged that Bryant, aided and abetted by Musgrave and Womack, unlawfully "participated" in the proceeds of the loans. The sixth count charged that Musgrave, as Chairman of the Board of the Association and aided and abetted by Womack and Bryant, fraudulently caused the Association to make the loans, knowing that they were not secured by sufficient collateral. The seventh count charged that Musgrave, aided and abetted by Womack and Bryant, unlawfully shared in the loan proceeds. Counts three and five were dismissed. A jury found Musgrave guilty on counts one, two, four, six, and seven, and Bryant guilty on counts one, four, six, and seven. Both appealed.[5] We reverse.

The loans to Womack and Koon were arranged with the aid of Musgrave, acting as Chairman of the Board of the Association, to enable Womack to purchase Musgrave's controlling interest in the Association. Musgrave and Womack entered into a contract whereby Musgrave

---

1. Womack was severed from the joint trial.

2. 18 U.S.C.A. § 371 provides in pertinent part:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. 18 U.S.C.A. § 657 provides in pertinent part:

   Whoever, being an officer, agent or employee of or connected in any capacity with * * * any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation * * *, embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $5,000 or imprisoned not more than five years, or both. * * *

4. 18 U.S.C.A. § 1006 provides in pertinent part:

   Whoever, being an officer, agent or employee of or connected in any capacity with * * * any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation * * *, with intent to defraud any such institution * * *, makes any false entry in any book, report or statement of or to any such institution, or without being duly authorized, * * * issues, puts forth or assigns any note, debenture, bond or other obligation, or draft, bill of exchange, mortgage, judgment, or decree, or, with intent to defraud the United States or any agency thereof, or any corporation, institution, or association referred to in this section, participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such corporation, institution, or association, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

5. Koon was acquitted on count one, the only count with which he was charged.

agreed to sell Womack 14,150 shares of his stock in the Permanent Reserve Fund Stock of the Association. Musgrave's stock represented 56 percent of the total outstanding shares and carried a $1,600,000 price tag—$1,200,000 cash and a $400,000 promissory note.

To enable Womack to meet the $1,200,000 down payment, Musgrave agreed to cause the Association to make two loans for a total of $1,460,000: one loan to Womack for $960,000 secured by certain real estate in Fort Worth, Texas, known as the Trans-American Building, and the other loan to Koon, Womack's nominee, for $500,000 secured by a 1,670-acre farm near Toyah, Texas.

The contract was prepared by Musgrave's attorney Bryant after a basic agreement had been reached between Musgrave and Womack. Bryant acted as Musgrave's counsel and disbursed the proceeds of the loans. Out of the loan proceeds, $1,227,629.90 was paid to Womack, who then endorsed checks for $1,200,000 and delivered them to Musgrave, who in turn delivered them to Bryant. After depositing the funds in a trustee account, Bryant made disbursements, including $1,107,000 to Musgrave and $30,000 in attorney's fees to Bryant's law firm.

The various charges in the indictment against Musgrave and Bryant center upon one basic allegation: Musgrave, as Chairman of the Board of the Association and with the aid of Bryant as his counsel, defrauded the Association by causing the loans to be made although Musgrave and Bryant knew the Trans-American Building and the Toyah farm represented grossly inadequate security for the loans and that Musgrave's appraisal reports assigned values to the properties far in excess of their fair market values.

At the time of loan closing, Musgrave submitted appraisals valuing the building at $1,750,000 and the Toyah farm at $667,000. These values would have represented ample collateral for the loans. In submitting these valuations to the Association Musgrave relied on his own appraisals, as well as those of Vernon Thomas. Neither Thomas nor Musgrave was an MAI[6] appraiser, although the Musgrave-Womack contract provided that the Association be furnished with MAI appraisals of the properties reflecting a fair market value of no less than 133⅓ percent of the loans to make them "75% loans." The Government put on extensive proof that these valuations were far too high.[7]

Presiding over the Association's loan committee meeting on June 28, 1968, Musgrave presented the two loans for committee approval. Although the committee took no formal action, the loans were closed that same day. On July 2, 1968, the Board of Directors formally approved the two loans.

On appeal Musgrave and Bryant argue that the trial court's jury charge contained numerous errors and that count seven of the indictment is fatally defective. Additionally, Bryant argues that his motion for a judgment of acquittal based on insufficiency of the evidence was erroneously denied.

## BRYANT'S APPEAL

We first direct our attention to Bryant's challenge of the sufficiency of the evidence concerning his intent to defraud the Association based upon his alleged knowledge that the Trans-American Building and the Toyah farm were inadequate collateral to secure the two loans made by Home Savings Association.

With respect to the Toyah farm, the Government defends the verdict by point-

---

6. "Member Appraisal Institute." An MAI appraiser is a member of the American Institute of Real Estate Appraisers of the National Association of Real Estate Boards.

7. At least two MAI appraisers, Charles Herman and E. T. Compere, placed the fair market value of the Trans-American Building at $145,000 and $232,000, respectively. Compere also appraised the Toyah farm at $110,000.

ing out that Bryant discovered, after the contract was executed, that Always, Inc., not Womack, owned the farm, and that Bryant knew that the resolution authorizing Always, Inc. to transfer the property to Womack recited a consideration of $167,000 as compared with a represented value of $667,000 for the loan. The Government additionally relies upon Bryant's close relationship with Musgrave; the fact that Bryant had toured the Trans-American Building and knew it to be only partially occupied; the fact that Bryant received a $30,000 fee; and Bryant's haste to close the loan.

We discern nothing sinister, nor do we think any unfavorable inferences can be drawn, as the Government argues, from the fact that Always, Inc., not Womack, was found to be the owner of the farm. Womack stated that he controlled the corporation. Not only was this undenied, but the conveyance of the farm was made to Womack so that, on the day of closing, his ownership was precisely as it was represented in the contract. Furthermore, Bryant's insistence that the corporate resolution authorizing the conveyance of the Toyah property to Womack be changed from showing "$10.00 and other valuable consideration" to a requirement for the transfer of the title only upon the payment of the existing first lien of $167,000 to American Trust Life Insurance Company, was to insure the payment of the encumbrance, so that there would be no outstanding impediment in obtaining a title insurance policy at the time of closing. There was no evidence that this amount constituted the total consideration to be paid by Womack.

The other circumstances relied upon by the Government to establish Bryant's intent give us little pause. We are entirely unimpressed with the argument that Bryant's close relationship with Musgrave as attorney and client may establish guilt or knowledge; that a tour through a building by an attorney gives him competence to assess its value; or the fact that Bryant received a flat fee for services rendered, which was openly deposited in his firm account, in some manner not only casts suspicion on him but proves his intent to defraud. Finally, under all of the circumstances extant, it seems clear that Bryant did nothing other than well serve his client by expeditiously closing the transaction.

■ In passing the Government suggests that Bryant was a sometime agent or employee of the Home Savings Association. This contention requires only brief comment. There was no evidence of any agreement, express or implied, between Bryant and anyone representing the Association that he would render any service for it. Bryant had never met any of the directors of the Association when this transaction occurred and, in fact, had never been in its place of business except once to represent a client. It is common knowledge and practice that acting as a closing agent in a loan transaction does not create an agency or employer-employee relationship between the closing agent and the lending institution. Finally, Bryant received no fee from the Association for any service performed by him.

■ After carefully reviewing the evidence in this case and taking the view most favorable to the Government, we are firmly convinced that there exists no substantial evidence to support the jury's verdict on any of the counts against Bryant. *See* United States v. Glasser, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Hill, 5 Cir. 1971, 442 F.2d 259; United States v. Ramirez, 5 Cir. 1971, 441 F.2d 950; United States v. Reid, 5 Cir. 1971, 441 F.2d 1089; United States v. Warner, 5 Cir. 1971, 441 F.2d 821; Sanders v. United States, 5 Cir. 1969, 416 F.2d 194, 196, cert. denied, 1970, 397 U.S. 952, 90 S.Ct. 978, 25 L.Ed.2d 135; Jones v. United States, 5 Cir. 1968, 391 F.2d 273, 274. Thus Bryant's motion for a judgment of acquittal should have been granted.

MUSGRAVE'S APPEAL

■■ Turning now to the merits of Musgrave's appeal, the Government has

with commendable candor conceded that count seven of the indictment is fatally defective since it omitted an essential element of the offense—"intent to defraud the Home Savings Association of Odessa, Texas." Any conviction based on a fatally defective indictment must, of course, be reversed. Honea v. United States, 5 Cir. 1965, 344 F.2d 798, 804; *see* Pullen v. United States, 5 Cir. 1947, 164 F.2d 756, 760–761.

With respect to the other counts, Musgrave's threshold attack is that the trial judge committed reversible error in submitting a jury charge filled with prejudicial comments: in doing so, the judge "incited the jury against Musgrave, assumed the role of a witness and an advocate, demonstrated that he believed Musgrave guilty and in effect urged the jury to convict." Most of these objections were brought to the attention of the trial court. Those that were not may be reviewed if they come within the purview of the plain error rule, Fed.R. Crim.P. 52(b). Bearden v. United States, 5 Cir. 1968, 403 F.2d 782, 786–787, cert. denied, 393 U.S. 1111, 89 S.Ct. 920, 21 L.Ed.2d 808.

## I.

In the introductory portion of the charge, the trial judge stated:

> This is a very serious case. It merits your careful consideration and I am sure it will receive it, just as you have carefully given your attention to the testimony in this case. It involves a Savings and Loan Association which has become a very important part in American life *in which thousands— hundreds of thousands of depositors place their life savings.* (emphasis added)

Later in the charge, he injected this comment:

> You should weigh this [the evidence] fairly and impartially to all parties, *to the public that puts their money in there, the depositors that put their life savings in there* as well as these Defendants. (emphasis added)

And at one point, referring to Musgrave, the trial judge remarked:

> * * * I think everybody knows that with all of that control of stock, that he was in a position to and did what he wanted to.

These comments, while not presenting to the jury collateral issues not charged in the indictment, as argued by defendant, do exhibit a prosecutor's zeal on the part of the judge. *See, e. g.,* United States v. Marzano, 2 Cir. 1945, 149 F.2d 923, 926. In his charge to the jury as well as in his examination of witnesses, the trial judge must be extremely careful to refrain from becoming an advocate for the Government. *See* Hellman v. United States, 5 Cir. 1964, 339 F.2d 36, 37. If the trial judge fails in his duty, "[t]he jury is almost certain to get the idea that the judge is on the side of the Government. The cloak of impartiality which the judge should wear is destroyed." United States v. Hill, 7 Cir. 1964, 332 F.2d 105, 106; *see* Gomila v. United States, 5 Cir. 1944, 146 F.2d 372, 373–374.

Here, moreover, the prejudicial effect of the District Judge's comments reached the jury without the benefit of an instruction that a jury is not bound by the judge's questions or comments.

It is well settled that a federal district judge is not relegated to complete silence and inaction during the course of a criminal jury trial. He must, however, be most careful that his interventions are proper, timely, made in a fair effort to clear unanswered issues, and are not prejudicial to defendant. Many federal decisions recognize the power of the judge, within reasonable limits, to comment on the evidence and to express fair opinions. This privilege, however, has been limited to the point where the *trial judge is under a strict duty to direct the jury clearly that they* are the sole judges of the facts and *are not bound by the judge's questions or comments.* * * *

It is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge, the trial arbiter, and that some comments may be so highly prejudicial that even a strong admonition by the judge to the jury, that they are not bound by the judge's views, will not cure the error.

* * * A trial judge must strive for total neutrality and complete circumspection, in the eyes and minds of the jury.

Bursten v. United States, 5 Cir. 1968, 395 F.2d 976, 982–983 (footnotes omitted) (emphasis added); *see* Starr v. United States, 1894, 153 U.S. 614, 626–628, 14 S.Ct. 919, 38 L.Ed. 841; Moody v. United States, 5 Cir. 1967, 377 F.2d 175, 178–180.

■ Thus the rule in this Circuit is clear: if the trial judge chooses to comment on the evidence, he must instruct the jury that they are not bound by his comments or questions. Kyle v. United States, 5 Cir. 1968, 402 F.2d 443, 445; Bursten v. United States, *supra;* Moody v. United States, *supra.* Failing in this, the trial judge committed reversible error.

## II.

Musgrave contends that the trial judge erroneously directed verdicts on certain fact issues: first, whether the overt acts alleged in the conspiracy count occurred, and, second, whether the collateral for the loans was grossly inadequate. On the conspiracy count the trial judge made the following comments concerning the alleged overt acts:

They don't have to establish that all of them were done, although *I think practically all of them, as far as the act itself, that they set out, was done.*

* * * As I said, if you find the conspiracy existed, *most of these, it appears from the evidence, did occur.*

* * * * * *

* * * Of course *they are the ones participating in most of these acts.* (emphasis added)

■ Concerning the collateral for the loans, the Government's burden at trial was to prove that Musgrave knew that the collateral was grossly inadequate. This, of course, involved convincing the jury, independent of Musgrave's knowledge, that the collateral was in fact grossly inadequate. Regarding these issues the trial judge charged:

Now in this other part here, where they say that the appraisals of the property were grossly inflated, and the properties were inadequate security, I think the testimony clearly demonstrated that even before they finished up, admittedly it was grossly inadequate. I don't think anybody would contend that this property out here in Toya was worth any more than what the man—the hundred and sixty seven thousand dollars.

■ Whether any of the alleged overt acts occurred and whether the collateral was grossly inadequate were fact issues for the jury to decide. The effect of the trial judge's comments was to direct a verdict on these *fact issues.* *See e. g.,* Brooks v. United States, 5 Cir. 1957, 240 F.2d 905, 906.

[N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict either in whole or in part.

Roe v. United States, 5 Cir. 1961, 287 F.2d 435, 440 (footnote omitted), cert. denied, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed. 2d 29. No matter how conclusive the evidence, any such instruction amounts to plain error. United States v. Ragsdale, 5 Cir. 1971, 438 F.2d 21; *see* Bearden v. United States, *supra,* 403 F.2d at 787; Mims v. United States, 5 Cir. 1967, 375 F.2d 135, 148; Montford v. United States, 5 Cir. 1959, 271 F.2d 52.

## III.

The Government adduced evidence which if believed by a jury tended to prove that Womack had not been entirely

honest in his prior business dealings. In fact, the trial judge described him as a man "who everybody admits was certainly a shady character." He later linked Musgrave to Womack in stating that

> there is no question but what Womack was working with him [Musgrave] hand in glove because Womack certainly, from the testimony here, in signing the agreement and putting the property up and these appraisals that were furnished, he would be as culpable.

The effect of these comments was to suggest Musgrave's guilt by association with Womack. Courts must protect against the human tendency to conclude that people like "birds * * * are frequently judged by the company they keep * * *." Roe v. United States, 5 Cir. 1963, 316 F.2d 617, 623. Equally important, the trial judge must be careful to maintain an attitude of impartiality and avoid giving the jury any impression that he believes the defendant is guilty. Baker v. United States, 5 Cir. 1966, 357 F.2d 11, 14. In the instant case the judge's characterization "of the accused was of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." Quercia v. United States, 1933, 289 U.S. 466, 472, 53 S.Ct. 698, 700, 77 L.Ed. 1321. These comments constituted plain error. *See* United States v. Ragsdale, *supra*.

### IV.

The judge capsulized the issues by saying:

> If you believe what [Musgrave] said, then you should acquit him but *if you think he was doing this to carry out his previous agreement to sell this stock for a profit then of course you should convict him* and those that you find participated and conspired with him to see that this could be brought about. (emphasis added)

While it is true that the court previously qualified this charge by telling the jury that Musgrave should be convicted if what he did adversely affected the depositors he, in effect, at this time instructed the jury without qualification that if Musgrave intended to sell his stock at a profit the jury must convict him. The question of intent to make a profit from the sale of stock is irrelevant to the crimes for which he was charged. Furthermore, the instruction was worded so that the jury was lead to believe that this was the basic issue in the case. This was plain error. *Cf.* Bollenbach v. United States, 1946, 326 U.S. 607, 613–614, 66 S.Ct. 402, 90 L.Ed. 350.

The cases relied on by the Government to support its position that no portion of the charge discussed above constitutes reversible error are inapposite. In Petro v. United States, 6 Cir. 1954, 210 F.2d 49, 50–51, cert. denied, 347 U.S. 978, 74 S.Ct. 790, 98 L.Ed. 1116, Northern California Pharmaceutical Association v. United States, 9 Cir. 1962, 306 F.2d 379, 387–388, cert. denied, 371 U.S. 862, 83 S.Ct. 119, 9 L.Ed.2d 99, and Heinecke v. United States, 1961, 111 U.S.App.D.C. 98, 294 F.2d 727, 728–729, cert. denied, 368 U.S. 901, 82 S.Ct. 173, 7 L.Ed.2d 96, the court in each instance took great pains to carefully point out that the jury was at liberty to disregard its comments on the evidence. By way of dictum, the Supreme Court in United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, suggested that a trial judge may express an opinion as to the guilt of the defendant in "exceptional" cases, such as when the defendant admits without dispute all the elements of the crime for which he is charged. *Id.* at 394, 54 S.Ct. 223. *Murdock* held however, it was reversible error for the court to opine as to the defendant's guilt beyond a reasonable doubt when willfulness, an essential element of the statutory offense, had not been admitted. *Id.*

### V.

Musgrave next argues that in instructing on counts one, two, four, and six, the trial court failed to charge the jury on the element of "intent to de-

fraud" and the element of identifying the entity defrauded—in the case *sub judice*, the Home Savings Association of Odessa, Texas. In instructing specifically on count four, the trial judge made no reference to either of these essential elements. Furthermore, while the instruction on count two mentioned "intend to defraud," it failed to identify the entity defrauded. Just as an indictment which omits an essential element of the crime charged must be dismissed as fatally defective, the trial judge's failure here to instruct the jury on all the essential elements of the crimes in counts two and four, even though not requested, was plain error. United States v. Rybicki, 6 Cir. 1968, 403 F.2d 599, 602–603; Jackson v. United States, 1965, 121 U.S. App.D.C. 160, 348 F.2d 772, 773–774; Walker v. United States, 5 Cir. 1965, 342 F.2d 22, 25, cert. denied, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97; Lott v. United States, 5 Cir. 1955, 218 F.2d 675, 680 n. 7. The only argument the Government makes is the unlikely assertion that the elements of "intent to defraud" and identifying the entity defrauded were presented to the jury in the "converse," by charging in effect that if Musgrave was acting in good faith, he should be acquitted. This instruction, however, was clearly insufficient, since it merely explained a theory of defense and was not a charge on the elements of intent to defraud the Association.

■ Counts one and six stand in a different light. The failure to instruct in count one on the elements of intent to defraud the Association was not error. Even if the indictment on count one had omitted the element of intent to defraud, it would not have been defective, "because it was not necessary to state the object of the conspiracy with the same precision which would be required in an indictment charging the substantive offense." Walker v. United States, *supra,*

342 F.2d at 27; Lott v. United States, 5 Cir. 1962, 309 F.2d 115, 120, cert. denied, 1963, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498. Likewise, the instruction on count six, a substantive charge, delineated the necessary elements of the offense charged. Thus the charge on counts one and six were not erroneous in this respect.

## VI.

■ Musgrave also contends that the trial court erroneously refused his requested jury instruction on the defensive theory of good faith. We think there was evidence from which a jury could infer good faith on the part of Musgrave, and he was therefore entitled to have the jury instructed on this defense.[8] Strauss v. United States, 5 Cir. 1967, 376 F.2d 416, 419; Perez v. United States, 5 Cir. 1961, 297 F.2d 12, 15–16. Moore v. United States, 5 Cir. 1966, 356 F.2d 39, relied on by the Government, is not to the contrary. *Moore* was concerned with the duty of a court to explain its instructions in sufficient detail and was not concerned with the sufficiency of evidence to entitle a defendant to a jury instruction on a particular defense. *See id.* at 43. While the trial judge instructed the jury on good faith, he defined good faith to mean, in effect, loans made for the benefit of the Association. If, however, these loans were made with the intent to make a profit on the sale of the stock, they were made in bad faith. As previously discussed, Musgrave's intent to profit from the stock sale was irrelevant to the crime charged and, in any event, had nothing to do with the defense that he in good faith believed the value of the collateral for the loans was adequate. At one point in the charge, the trial judge did relate Musgrave's possible good faith to reliance on the appraisals, but he then erroneously instructed the jury that

8. Musgrave points out that he submitted evidence of appraisals given to him by Mr. Thomas which indicated that the property was adequate security for the loans, and that he testified he had no intent to de-

fraud the Association and his sharing in the proceeds of the loan was fully disclosed to the other directors of the Association.

•

there was no evidence of Musgrave's reliance on such appraisals. Such an instruction amounted to a directed verdict on the defense of good faith. Even if the evidence to support the defense was "fragile," Strauss v. United States, *supra*, 376 F.2d at 419, or "weak insufficient, inconsistent, or of doubtful credibility," Tatum v. United States, 1950, 88 U.S.App.D.C. 386, 190 F.2d 612, 617; *accord*, Strauss v. United States, *supra*, 376 F.2d at 419, it was error to refuse to give to the jury the substance of Musgrave's requested instruction concerning good faith reliance on the appraisals he submitted to the Association.

We also find that the trial judge erroneously refused Musgrave's requested instruction concerning the defensive theory of his reliance on advice of counsel. The Government's assertion that there is no evidence to support such a charge is without merit. *See* Bursten v. United States, *supra*, 395 F.2d at 981–982.

## VII.

Musgrave urges that the trial judge erred in refusing to admit the testimony of witness LaFever on the issue of Musgrave's intent. LaFever owned farm property in the area of the Toyah farm, one of the properties which served as collateral for the loans. LaFever's proffered testimony was to the effect that he told Musgrave prior to the making of the loans that he had refused an offer of $400 per acre for his land. This testimony was relevant to the question whether Musgrave did in good faith believe the Toyah farm was worth at least $400 per acre. Since the Toyah farm included 1,670 acres, its value based on LaFever's testimony, could have been $668,000. Musgrave's appraisal report valued the farm at $667,000. Based on these facts, we conclude that it was error to have excluded LaFever's proffered testimony. *See* United States v. Matot, 2 Cir. 1944, 146 F.2d 197, 198–199; Miller v. United States, 10 Cir. 1941, 120 F.2d 968, 970.

## VIII.

Since there is error requiring reversal of the convictions on all counts, we need not decide, as defendants urge, whether the conviction on count seven was so prejudicial that it tainted the remaining convictions on the non-defective counts. For the same reason, we also pretermit consideration of Musgrave's contention that the trial judge erred in failing to instruct the jury that a unanimous verdict was required, even though he did not request such an instruction or request that the jury be polled.

Bryant's judgment of conviction is reversed, and the District Court is directed to enter a judgment of acquittal as to him. Musgrave's judgment of conviction is reversed on all counts and remanded for a new trial on counts one, two, four and six of the indictment. The District Court is further directed to enter an order dismissing count seven.

Reversed and remanded with directions.