**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Ruth Melvina MOSELEY et al.,
Defendants-Appellants.**

**No. 71-1171
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1971.

---

* [1] Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

**508**

Kendall T. Moran, Titusville, Fla. (Court-appointed), for Moseley.

Myron S. Krasny, Storms, Pappas & Krasny, Melbourne, Fla. (Court-appointed), for Adams.

Howard L. Mayes, Jr., Titusville, Fla. (Court-appointed), for Ted Banks.

Barry M. Salzman, St. Petersburg, Fla. (Court-appointed), for Bettker.

John L. Briggs, U. S. Atty., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Defendants appeal thei/ conviction and sentence for violating 18 U.S.C.A. §§ 371[1] and 2314.[2] They contend that the district court erred in denying their motions for particulars, a witness list, a severance and for a new trial. To this they add the Government's failure to comply with a pretrial order of discovery, trial errors in the reception and exclusion of evidence, and the failure to instruct as requested. We affirm.

During Labor Day weekend in 1968, numerous counterfeit Boeing Company payroll checks were negotiated at supermarkets in Brevard County and in Orlando, Florida. At the time Boeing employees were working under a government contract at the Cape Kennedy Space Center located in Brevard County. Company officials prepared the checks at Boeing offices in Louisiana and sent them to the Cape for distribution every other Thursday.

Many of the stores where the counterfeit checks were cashed utilized Dubl-Chek photographic equipment. Dubl-Chek cameras take split-frame simultaneous pictures of the person presenting the check for payment and his identification credentials. Store personnel thus photographed defendants Ruth Moseley and Joyce Adams when they cashed counterfeit Boeing checks. On one of the checks cashed by Adams was defendant Theodore Bettker's latent fingerprint.

*Errors Asserted by All Defendants*

■ Defendants argue that the district court erred in denying their motion for a new trial on the ground that the Government did not comply with the court's pretrial discovery order under Rule 16, Fed.R.Crim.P. The court ordered the Government to produce and furnish to each defendant a copy of his or her statement relative to the case and the results of scientific reports or tests made and in the possession of or known to the Government. The Government was also ordered to produce and furnish to each defendant copies of those checks pertaining to a defendant named in a count of the indictment and also any

---

1. Section 371 prohibits conspiracies to commit any offense against the United States or to defraud the United States.

2. Section 2314 proscribes interstate transportation of counterfeit or forged securities.

photographs of a defendant passing one of the Boeing Checks. The Government complied with the order by furnishing the required information to counsel for each defendant. When a defendant was charged with an overt act or substantive count, or both, the Government delivered a copy of the check to that defendant's counsel. Copies of scientific reports were also given to counsel for the appropriate defendant. Although the Government supplied two defendants with photographs and two others with statements indicating that their fingerprints were found on counterfeit checks, defendants claim that the Government's failure to provide photographs of fingerprints contravened the court's order. They insist that lack of this information precluded rebuttal or refutation of the testimony of the Government's fingerprint expert. This argument clearly lacks merit. More than seven months elapsed between the Government's production of discovery information and the trial. Defendants' counsel certainly knew that the Government had fingerprints, yet they did not request the court to appoint fingerprint experts pursuant to 18 U.S.C.A. § 3006A(e) (f), or ask the Government for copies of the prints. Under these circumstances we conclude that the district court did not abuse its discretion in refusing to grant the motion for a new trial. *See* United States v. Allsenberrie, 7 Cir. 1970, 424 F.2d 1209, 1215; White v. United States, 5 Cir. 1969, 415 F.2d 292, 293, cert. denied 397 U.S. 993, 90 S.Ct. 1128, 25 L.Ed.2d 400; Pierce v. United States, 5 Cir. 1969, 414 F.2d 163, 169, cert. denied 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425. In the situation *sub judice*, unlike that in United States v. Padrone, 2 Cir. 1969, 406 F.2d 560, 560–561, defendants had knowledge of the fingerprints' existence and ample opportunity to demand disclosure, if they deemed the photographs important to their case.

■ Next defendants contend that the district court abused its discretion in its denial of defendants' request for a bill of particulars. Having carefully considered the indictment, we conclude that the defendants' claim of prejudice lacks merit. The indictment sufficiently apprised the defendants of the accusations which they had to be prepared to meet. *See* Russell v. United States, 1962, 369 U.S. 749, 761–762, 82 S.Ct. 1038, 8 L.Ed.2d 240.

*Bettker*

■ Considered in the light most favorable to the Government, the record does not support Bettker's argument that the trial court erred in denying his motion for directed verdict of acquittal. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. The evidence overwhelmingly supports the Government's charge of Bettker's conspiratorial and substantive participation in the scheme. *See* United States v. Hill, 5 Cir. 1971, 442 F.2d 259; United States v. Warner, 5 Cir. 1971, 441 F.2d 821. Without detailing the evidence, suffice it to say that David Rose, who had previously pled guilty, testified that Bettker had given him a quantity of Boeing checks to cash. According to Rose, Bettker had driven him to various places to cash the checks and had then taken the proceeds. Other evidence and testimony corroborated Rose's statements.

■ Bettker further complains that he was erroneously foreclosed from eliciting testimony from defendant Moseley's husband which would have impeached the testimony of the co-conspirator Rose. Bettker argues that an assertion of the marital privilege by defendant Moseley should have been denied by the court (instead of it being granted) because Bettker's proffered queries concerned information which had nothing to do with confidential communications arising out of the marital relationship of defendant Moseley and her husband. But this is all hypothetical because Robert Moseley was not served with a subpoena, was not called and did not appear as a defense witness in court. In these circumstances, there was no live issue of marital privilege before the court.

Bettker also urges that inflammatory testimony was elicited from Rose during cross-examination by counsel for the co-defendants. While some extraneous incidents were testified to by Rose, there was substantial evidence of other illegal activity of Bettker which was related to the offenses for which he was being tried. Proof of other crimes which aid in the execution of the crimes charged in the indictment was not error. United States v. Ragsdale, 5 Cir. 1971, 438 F.2d 21. *A fortiori* it is not error when the proof of such other crimes is developed on cross-examination. Furthermore, Bettker's counsel did not move for a mistrial following Rose's testimony. "To allow the initial objection to be made on appeal would encourage the strategy of withholding objection while still creating reversible error in the event of appeal." Hattaway v. United States, 5 Cir. 1969, 416 F.2d 1178. The scope of cross-examination is within the sound discretion of the trial court. *Ibid* at 1180. We find no abuse of that discretion here.

### Moseley

Moseley's contention that the district court erroneously denied her pretrial motion for a witness list must fail. Requiring a list of adverse witnesses to be furnished by the Government is within the judicial discretion of the trial court. The record reflects no abuse of discretion in this instance. United States v. Hancock, 5 Cir. 1971, 441 F.2d 1285. Likewise, the trial court did not abuse its discretion in admitting photographs showing Moseley cashing Boeing checks. The purpose and function of the Dubl-Chek apparatus, as well as the conditions under which these photographs were made, were adequately explained by the Government's witnesses. Moreover, there can be no question of the photographs' relevancy to the issues *sub judice*. United States v. Daniels, 6 Cir. 1967, 377 F.2d 255, 258; *see* Burns v. Beto, 5 Cir. 1966, 371 F.2d 598, 600–601. Finally, we are of the view that Moseley's substantive acts coupled with Rose's testimony concerning her participation in the conspiracy sufficed to create a jury question as to Moseley's guilt. *See* United States v. Warner, *supra*. The district court did not err in denying her motion for directed verdict of acquittal.

### Adams

Similarly, Adams' argument that the trial court erred in refusing to grant her motion for directed verdict of acquittal or for judgment notwithstanding the verdict lacks substantiation in the record. Overwhelming evidence, including Dubl-Chek photographs, sustained the conviction of Adams with regard to the substantive check passing offenses. Since the sentences imposed on the substantive and conspiracy counts run concurrently, we decline to consider the validity of Adams' conviction on the conspiracy count. United States v. Bigham, 5 Cir. 1970, 421 F.2d 1344, 1346, cert. denied 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45.

### Banks

It is clear that the district court did not err in refusing to grant Banks' motion for severance. There was no showing of an abuse of discretion resulting in prejudice to Banks. Gordon v. United States, 5 Cir. 1971, 438 F.2d 858, 878–879; *see* White v. United States, *supra*, 415 F.2d at 293; United States v. Hansbrough and Rolls, 5 Cir. 1971, 450 F.2d 328. Nor did the court err in failing to strike the testimony of Walton, the Government's fingerprint expert, or, Government Exhibit No. 28, a Boeing check cashed by Banks at the Great Value Store in Titusville, Florida. A cashier testified concerning presentment, approval, acceptance, cashing and deposit of the check in question but could not identify Banks as the individual who presented the check. On the check, however, was a latent fingerprint. Walton, an FBI fingerprint expert, compared the fingerprint found on the check with Banks' print on a standard fingerprint card and found them to be the same. Further, Cochran, a Boeing employee, compared legitimate Boeing

checks which he had issued with the alleged counterfeits. Having heard the testimony and viewed the exhibits, the jury was entitled to draw their own conclusion concerning the genuineness of Government Exhibit No. 28. *See* Strauss v. United States, 5 Cir. 1963, 311 F.2d 926, 932, cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412, 28 U.S.C.A. § 1731. Nor did the trial court err in refusing to give Banks' requested alibi instruction, since Banks' only witness testified that Banks simply resided in a certain place at the time in question, not that he was actually there. This testimony was not inconsistent with that of Rose, who testified that Banks was engaged in activities elsewhere during that period. Finally, the district court properly found that the evidence was sufficient to support the jury's verdict as to Banks. *See* Glasser v. United States, *supra;* United States v. Hill, *supra;* United States v. Frost, 5 Cir. 1970, 434 F.2d 607.

The defendants had a full and fair trial. The errors that they assert individually and collectively are without merit.

Affirmed.