**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nemia BOSCH, Defendant-Appellant.**

**No. 74–1752.**

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1974.

Lawrence R. Metsch, Miami, Fla., (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Michael P. Sullivan, Donald L. Ferguson, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before DYER, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In criminal trials, any encroachment upon the broad right to a jury's general

verdict of guilty or not guilty is fraught with danger. In the bright light of appellate hindsight, we can see that what appeared below as an efficacious and unexceptional procedure masked instead the path to error. The special interrogatories which were used to narrow the issues for the jury may have required them to return a verdict of guilty even though they found that all elements of the offense had not been proved. This possibility requires reversal despite the express acquiescense of the court appointed counsel for the defendant in the defective procedure.

Nemia Bosch was indicted in a single count charging her with conspiracy to possess, with the intent to distribute, marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 846. The prosecution was based upon evidence that Bosch delivered 100 pounds of marijuana to Giovanni Felipe under an agreement that Felipe would attempt to find a buyer for it. During the course of this trial Bosch, who did not speak English and testified through an interpreter, took the stand and admitted that she delivered the marijuana to Felipe.[1] Apparently, the trial judge and counsel for both Mrs. Bosch and the government construed her testimony as admitting not merely a delivery to Felipe, but participation in a conspiracy to distribute the marijuana. It is altogether likely that this misconception was due to the substantial proof adduced from other sources that Bosch was a principal participant in the abortive sales scheme.

Bosch further testified that soon after her apprehension an individual claiming to be a federal agent attempted to extort money from her. It is undisputed that she promptly complained about this attempt to United States narcotics officials. She further swore that this complaint led to an agreement with these persons that she would cooperate with the government to identify and apprehend the extortionist in exchange for immunity from prosecution on the conspiracy charge.

In addition to evidence of Bosch's participation in a conspiracy to distribute the marijuana, the United States introduced testimony negating Bosch's claim that a promise of immunity was extended. The grant of immunity *vel non* became so much the focus of the trial that, at the commencement of the charge conference, the trial judge stated:

"Before we proceed with the charge conference, let me discuss this case and analyze it with you.

It seems to me—and I would like to hear from both of you—that this defendant has admitted the offense charged in the Indictment by way of a confession, and relies upon a promise by the Government of immunity from prosecution.

MR. PORTER (Counsel for Defendant): Yes, sir.

THE COURT: I think, actually, that is the only issue at this point to be submitted to the jury and for them to decide. Because if the jury believes that she has been promised immunity from prosecution by the Government in return for the information that she gave, then certainly the Government should be estopped from

---

1. Bosch's full testimony in this regard on direct examination by her counsel was as follows. The subject was not mentioned in cross examination.

"Q. Do you know Giovanni Felipé?
A. Yes, I have known him for the last year and a half or two years.
Q. Tell us how you met him.
A. He went over to the house once to visit with another man.
Q. Did you ever deliver him some marijuana somewhere around the 5th of October?
A. Yes. I gave it to him. That belonged to Lamanzares.
Q. Is that the man who turned up dead some time later?
A. Yes.
Q. Where did you get the marijuana?
A. He took it over and he knew I had it in the house.
Q. Who is "he"?
A. Germen Lamanzares.
Q. And you gave it to Mr. Giovanni for what purpose?
A. Well, because I gave it to him."

prosecuting her and she should be acquitted.

On the other hand, if they don't believe that, then they have to believe that she gave the marijuana to Felipe and that she knew all the time.

MR. PORTER: She candidly admitted that.

THE COURT: —that Felipe was dealing and what was going to be done with it.

It seems that is the only question.

Do you gentlemen disagree with that?"

No negative response is recorded. The court thereupon suggested that a special interrogatory be developed asking the jury to decide whether an agent of the federal government promised Bosch immunity from prosecution. The charge conference concluded with this exchange:

"THE COURT: I don't normally do it, and I wouldn't do it now unless counsel agree that is the thing to do. But I just suggest that so that you might get some idea of either a special charge or a special interrogatory for the jury to answer.

MR. PORTER: I think, considering the fact that any special charge will be given along with the other charges, the special interrogatory would be better, because I think it will narrow the issue, would be briefer and would be clearer and easier for the jury.

THE COURT: If you agree on an interrogatory, then at that point I am not going to even read the indictment to the jury. I am going to tell them that there remains one question in this case for them to decide and it is in the form of a special interrogatory which will be submitted to them; and I will read it to them. And along with the verdict forms I will have the clerk hand the jury the interrogatory. They will have to find one way or the other. And by the way they answer the question will determine what they find.

MR. SULLIVAN (Assistant United States Attorney): I wouldn't put it past the jury to answer the question "no" and acquit her, or answer the question "yes" and find her guilty.

THE COURT: If they do, then they will have to be sent back."

In its instructions, the court gave the jury several general charges outlining their function and duties, including charges on the presumption of innocence and that the burden of proving defendant guilty beyond a reasonable doubt rested throughout the trial upon the government. Consistent with the agreed upon procedure, the elements of the offense of conspiracy were not defined. Only the special interrogatory was cast in terms specifically related to the issues raised in the case. The court stated:

"A form of special interrogatory and a general verdict has been prepared for your convenience.

You will take these forms to the juryroom.

I will direct your attention first to the form of special interrogatory. It is styled in the cause, and it is called "Special Verdict" and then under here it says "Special Interrogatory", and it reads:

"Did an agent of the United States Government promise the defendant Nemia Bosch that she would not be prosecuted for the offense charged in Count I of the indictment?"

I have written the date in and the place. Then below that it reads:

"We, the jury, find that the answer to the special interrogatory is . . . ."

And there is a (yes) and a (no), so say we all, and there is a line with the word "foreman" under it.

You are to give a unanimous yes or no to this question. And when you have reached a unanimous decision or finding as to that fact, you will have your foreman sign it.

The general verdict is dated February blank, 1974, Miami, Florida, and it reads:

"We, the jury, find the defendant Nemia Bosch . . ."

and there is a blank line . . .

"as to Count I as charged in the indictment."

Under that line are the words "(not guilty) or (guilty)." But that is merely advisory.

You will take these forms with you to the juryroom together with any evidence or exhibits that you may desire. And, if you find from the testimony that an official of the Federal Government promised immunity from prosecution to Nemia Bosch in exchange for her cooperation in their investigation, then you should find the defendant not guilty.

You are specifically requested first to determine if, as a matter of fact, such immunity was given, and you should make this finding of fact.

If your answer to this special inquiry is yes, then you should find the defendant not guilty. If your answer is no, then you should find the defendant guilty."

■ Through different counsel appointed for this appeal, Bosch asserts that the district court erred in failing to instruct on the elements of the offense, in submitting the immunity issue to the jury on special interrogatories, and in directing that a negative answer to the

issue mandated a verdict of guilty. Fed.R.Crim.P. 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The asserted errors here were not merely unassigned, defense counsel participated and acquiesced in each of the actions challenged.[2] To reach such points on this appeal, we must first conclude that they are within the category of errors that affect substantial rights.

The background against which this decision must be made has been adequately summarized. See C. Wright, Federal Practice and Procedure: Crim. §§ 854–6. The outcome in such cases depends a great deal more upon an intuitive sense of justice than upon a search for precedent. Stare decisis is of little importance—the rule is essentially ad hoc, e. g., United States v. Barcenas, 498 F.2d 1110 (5th Cir. 1974); United States v. Morales, 477 F.2d 1309 (5th Cir. 1973); cf. United States v. Fernandez, 496 F.2d 1294 (5th Cir. 1974); United States v. Devall, 462 F.2d 137 (5th Cir. 1972).

Whether we think Bosch guilty or innocent is not a proper concern here—that is a jury's function. Indeed, more is at stake in the present appeal than just her substantial rights, though they must weigh heavily in the decisional equation.[3]

■ In determining whether to notice these errors, a more important consider-

2. Notwithstanding the action of the court in initiating the suggestion for this procedure at the charge conference, counsel's agreement and hearty endorsement of this course well might justify the classification of invited error. See Dennis v. United States, 341 U.S. 494, 500 n. 2, 71 S.Ct. 857, 862 n. 2, 95 L.Ed. 1137 (1951); United States v. Pentado, 463 F.2d 355 (5th Cir. 1972), cert. denied, 409 U.S. 1079, 93 S.Ct. 698, 34 L.Ed.2d 668, and 410 U.S. 909, 93 S.Ct. 963, 35 L. Ed.2d 271 (1973). Our concern for the integrity of the judicial process, as hereinafter explained, indicates that faulting appointed trial counsel is not the proper basis for resolving the issues presented.

3. We know from the record, despite the misapprehension of the court and counsel at trial as to the extent of Bosch's confession, that an unresolved fact issue remained. It is entirely conjectural as to what this jury's action might have been if their deliberation had not been limited to the promise of immunity issue. If not so restrained, they may even have chosen to pardon Bosch, though believing her a conspirator. See United States v. Ragsdale, 438 F.2d 21 (5th Cir.), cert. denied, 403 U.S. 919, 91 S.Ct. 2231, 29 L.Ed.2d 696 (1971). In the instant case, the judge made it clear that if the jury found that no promise of immunity was made, he would refuse to receive a verdict of not guilty.

ation is the over-all impact upon the system of criminal justice of allowing a conviction to flow from a jury's verdict which has been limited by judicially fashioned blinders to a single specified fact issue. This procedure is so fraught with danger for the defendant in particular and for the system in general that we review it here despite the fact that the attorney for the defendant did not comply with the salutary commands of Fed.R.Crim.P. 30.[4] Not only because the errors affect substantial rights, but because they also squarely place the integrity of the judicial process at hazard, they must be reviewed. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Atkinson, 297 U.S. 157, 56 S. Ct. 391, 80 L.Ed. 555 (1936); United States v. Vaughn, 443 F.2d 92 (2d Cir. 1971).

As is predictable from the fact that they emanate from a single action of the district court in this case, the errors asserted here are essentially intertwined. The failure to instruct on all of the elements of the offense occurred because the trial judge and counsel considered that only a single issue remained for jury resolution. The result of this one-issue instruction was to direct a verdict of guilt on the unresolved, uninstructed question of conspiratorial conduct.

 Though our decisions in this area of the law may, at first blush, appear to lack total harmony, they do follow a pattern. Three overriding principles emerge. (1) The court should define the crime charged and specify its essential elements. A mere reference to the indictment is insufficient. United States v. Musgrave, 444 F.2d 755 (5th Cir. 1971); Merrill v. United States, 338 F.2d 763 (5th Cir. 1964); see Lott v. United States, 218 F.2d 675, 680 n. 7 (5th Cir. 1955). (2) A court should never direct a verdict of guilt, in whole or in part. United States v. Womack, 454 F.2d 1337 (5th Cir. 1972), cert. denied, 414 U.S. 1025, 945 S.Ct. 450, 38 L.

Ed.2d 316 (1973); United States v. Musgrave, *supra*, (3) Special interrogatories should not be used in criminal trials. United States v. James, 432 F.2d 303 (5th Cir. 1970), cert. denied, 403 U. S. 906, 91 S.Ct. 2214, 292 L.Ed.2d 682 (1971).

As with every generic statement, exceptions exist to these three. In United States v. Urbana, 412 F.2d 1081 (5th Cir. 1969), cert. denied, 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49, (1970), this court, while noting in dicta that the trial court's failure to instruct on all essential elements of the offense might have been harmless, held that no plain error had been demonstrated because the single unresolved factual issue in the case (identity of the defendant as the culprit) was submitted to the jury. It is significant to note, however, that the court directed all essential elements of the case to be charged on retrial.

In United States v. Harper, 460 F.2d 705 (5th Cir. 1972), we held that where defense counsel stipulated in open court that all allegations in the indictment were true and where the entire record disclosed that sanity was the only fact issue, the court's charge to the jury to this effect was not reversible error.

In United States v. McCracken, 488 F.2d 406 (5th Cir. 1974), a case in which the trial court had authorized the use of the "not guilty by reason of insanity" form of verdict in addition to the usual "guilty" and "not guilty" forms, we recognized that a special verdict or special question, though posing a danger, would not inevitably produce reversal. We held in that case that the facts were such that the defendant's guilt, aside from his sanity, was not in issue and, therefore, was not prejudiced by this form of presentation.

 The thread of consistency that is woven through these decisions can only be seen from a collective view. When an after-the-fact review of the entire transcript discloses that only a single issue truly remained for the jury considera-

---

4. *Compare* Hattaway v. United States, 416 F.2d 1178 (5th Cir. 1969).

tion and that no prejudice to the defendant's rights could have resulted from narrowing the jury's ambit to the one question posed, a plain error reversal of a court's curtailment of the jury's consideration is not required.

The thrust of our decision today is that this sort of game is not worth the candle. Harmless error is nevertheless error to be avoided by trial courts. In today's case it was not harmless, so this cause must go back to the trial court with direction to instruct on all of the elements of the offense charged and to refuse the use of all forms of special interrogatories and special verdicts in the retrial of this case. This practice may at times seem the longest way around, but adherence to these precepts is always the surest, if not the shortest, way through the procedural thicket.

The order of judgment and commitment appealed from is reversed and the cause is remanded for a new trial.

Reversed and remanded.