UNITED STATES of America,
Plaintiff–Appellee,

v.

Martin D. HERZOG,
Defendant–Appellant.

No. 79–5219.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1980.

Rehearing and Rehearing En Banc
Denied Jan. 12, 1981.

Terry H. Gilbert, Cleveland, Ohio, for defendant–appellant.

Judy S. Rice, Asst. U. S. Atty., Tampa, Fla., for plaintiff–appellee.

Before BROWN, TJOFLAT and GARZA, Circuit Judges.

GARZA, Circuit Judge:

Martin D. Herzog was convicted by a jury of willfully supplying false or fraudulent income tax withholding exemption statements to his employers in violation of section 7205 of the Internal Revenue Code.[1] He contends on appeal: (i) that the trial court committed plain error in failing to charge the jury on an essential element of the offense; (ii) that the trial court abused its discretion in restricting the testimony of Herzog's expert witness; (iii) that the trial court erroneously refused to admit into evidence a letter Herzog had written to the Internal Revenue Service (IRS); (iv) that the trial court erred in permitting the Government to ask Herzog, on cross–examination, about tax withholding statements that he had filed after being told that he faced criminal prosecution; (v) that the evidence adduced at trial was not sufficient to sustain a conviction; and, (vi) that the conduct of the judge violated Herzog's sixth amendment right to a fair trial.

## I.

Martin Herzog's difficulties with the IRS began with an audit of his 1973 income tax return. As a result of the audit, the IRS determined that Herzog had claimed certain deductions in the wrong tax year, and assessed an additional tax of $217. Herzog was informed, however, that he could claim the deductions of moving and automobile expenses. An IRS auditor, Charles Santana, testified for the prosecution that he had attempted to interview Herzog on January 8, 1976. Herzog had invoked the fifth amendment and refused to answer any questions about the tax return. When Santana confronted Herzog with the text of I.R.C. § 6001, which authorizes the IRS to request that a taxpayer substantiate his income tax return, Herzog responded that "he felt the income tax laws were unconstitutional and that he would take it to the Supreme Court." Record, vol. 5, at 23.

Witnesses for the prosecution testified that during the period relevant to this case, Herzog was employed consecutively by several companies as a pipefitter–welder. In November, 1975, when he was working for Lake Plumbing, Inc., he submitted to the employer a W–4 form claiming four allowances. On January 8, 1976, the date of the audit interview, he gave the same employer a W–4 form claiming 99 allowances. Eleven days later, he gave lake Plumbing, Inc. a W–4(e) form on which he indicated that he was totally exempt from withholding. On February 12, 1976, he supplied another employer, Tampa Ship Repair and Dry Dock Company, a W–4 form on which he again claimed 99 allowances. He gave a third employer, Mathews Corporation, a W–4 form claiming 99 allowances on April 6, 1976. On March 7, 1979, he claimed 99 allowances, once again, on a W–4 form that he submitted to his employer, Aire–Therm Systems, Inc. Aire–Therm Systems became concerned that Herzog had not legitimately asserted his purported income tax exemption and, on September 30, 1976, sent him a letter instructing him to complete a W–4(e) form if he was entitled to a total exemption from withholding, and, if he was not exempt, to fill out a new W–4 form, including only those allowances to which he was properly entitled. Soon thereafter, Herzog executed a W–4(e) form, claiming a total exemption.

The Government also presented evidence that while Herzog was employed by Aire–Therm Systems, Inc., as a pipefitter–welder foreman, two co–workers, members of his crew, also filed W–4 forms claiming 99 allowances. One of the co–workers testified that Herzog had said that he was angry because the IRS had disallowed a moving expense and that "he said he wouldn't pay taxes or he wasn't going to." *Id.* vol. 4, at 174.

---

1. I.R.C. § 7205 provides:

Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an in-

crease in the tax to be withheld under section 3402, shall, in lieu of any other penalty provided by law (except the penalty provided by section 6682), upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both.

Herzog took the stand in his own defense and testified that following the audit of his 1973 tax return, he had begun an extensive study of federal income tax law and constitutional law, spending most of his free time doing legal research. He explained that his research led him to believe that the sixteenth amendment authorized the taxation of income only, that "income" has been limited by case law to include only "profits and gains", and that his wages were not profits or gains. *Id.*, vol. 5, at 131–36. He related the latter proposition of his theory as follows:

> ... I cannot believe when I put eight hours of work in and I give that to that employer, he is using my work and my labor and my toil and my skills and my trade and he is–he is employing me and then, he is marking up my labor and selling it at a profit. He is the one making the profit; not me.

*Id.* at 135–36. With prompting from his lawyer, he referred to his theory as the "equal exchange theory." *Id.* at 136. He also testified that he found the Internal Revenue Code "contradictory" and confusing. *Id.* at 131.

He had filed the W–4(e) forms claiming a total exemption, Herzog asserted, because his studies had resulted in his believing that his wages were not taxable. He testified that he had claimed 99 allowances on the W–4 forms only because W–4(e) forms were not available, and he wanted to insure that nothing would be withheld from his wages.

On cross–examination, the Government elicited from Herzog a statement that he had believed his wages not to be taxable even before he filed his return for the 1975 tax year in February, 1976, but that he had paid taxes anyway because he "didn't have the nerve" not to. *Id.* at 174. When he was asked about several of the cases on which he claimed to have based his theory, he could remember neither their facts nor their holdings. *Id.* at 164–65. The Government also questioned him about his 1976 income tax return, which the Government had introduced into evidence. The tax return consisted of a duplicate of the official 1040 form attached to a booklet of protest material attacking the tax laws as invalid for various reasons, including the improper use of tax money to fund abortions, the Treasury's use of federal reserve notes rather than "lawful" money redeemable in gold, the unconstitutionality of the sixteenth amendment, and the conviction of a W. Vaughn Ellsworth for the "filing of a false return" for 1968. Government's Exhibit No. 13. Herzog admitted that he had endorsed the contents of the protest booklet, but said that he did not actually believe all of the arguments in the material to be valid. *Id.* at 197–181.

The defense called only one witness other than Herzog–Dr. David Goshien, a professor of tax law at Cleveland State University, who had also worked as a consultant to the IRS. The court found Goshien qualified as an expert in the area of tax law, but sustained relevancy objections to each of the defense attorney's questions to Goshien.

## II.

We first consider Herzog's claim that the trial court did not properly instruct the jury concerning the essential elements of the offense of supplying false and fraudulent tax withholding information. In charging the jury on the nature of the offense, the court said:

> Title 26, United States Code, Section 7205, the law cited in the respective counts of the information, provides in pertinent part as follows:
>
>> Any individual required to supply information to his employer under Section 3402 who willfully supplies false or fraudulent information [shall be guilty of an offense against the United States.]
>
> In order to establish the respective offenses charged, the government must prove as to each count the following essential elements beyond a reasonable doubt:
>
>> First: That the defendant furnished his employer with a signed withholding allowance certificate or exemption certificate, as charged in the information;

Second: That the defendant supplied false or fraudulent information to his employer in such certificate; and

Third: That the defendant supplied such false or fraudulent information knowingly and willfully.

Record, vol. 1, no. 28 at 6. Although Herzog did not object to this jury instruction in the district court, he now urges that the instruction was fundamentally erroneous since it took from the jury the issue whether he was an "individual required to supply information to his employer under section 3402." *See* note 1 *supra.* Accordingly, he asks us to reverse his conviction under the "plain error" rule. Fed.R.Crim.P. 52(b).

■ The section 3402 obligation to file a withholding certificate applies to any "employee." I.R.C. § 3402(f)(2)(A). Since the section 3402 obligation is a prerequisite to liability under section 7205, Herzog could not be guilty of the offense charged, unless he was an "employee" at the times he submitted the withholding forms that are the subject of the indictment. Thus, Herzog's employee status was an "essential element" of the offense. *See United States v. Johnson,* 576 F.2d 1331, 1332 (8th Cir. 1978) (per curiam); *United States v. Pryor,* 574 F.2d 440, 443 (8th Cir. 1978) (per curiam); *United States v. Smith,* 487 F.2d 329, 330 (9th Cir. 1973) (per curiam), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974). A trial court has the obligation to instruct the jury on *all* the essential elements of the crime charged, even though the defendant fails to request such an instruction. *United States v. Musgrave,* 444 F.2d 755, 764 (5th Cir. 1971), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). The jury instructions in the present case were erroneous, since they did not identify employee status as an "essential element" of a section 7205 offense, and since they appear to *assume* that Herzog was an employee.

■ The failure to instruct the jury on an essential element of the offense charged does not always amount to reversible "plain error", however. As this court said in *United States v. Bosch,* 505 F.2d 78, 82–83 (5th

Cir. 1974), "When an after–the–fact review of the entire transcript discloses that . . . no prejudice to the defendant's rights could have resulted from narrowing the jury's ambit . . ., a plain error reversal of [the trial court's omission of an essential element of the offense from the jury charge] is not required." The *Bosch* holding accommodates the requirement of Fed.R.Crim.P. 30 that a party raise any objection to "any portion of the charge *or omission therefrom* . . . before the jury retires to consider its verdict," and the provision of Fed.R.Crim.P. 52(a)'s that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." (Emphasis added.) *See Olar v. United States,* 391 F.2d 773 (9th Cir. 1968).

It is clear from the transcript that Herzog's status as an employee was "not only undisputed, but indisputable." *Id.* at 775. Herzog admitted numerous times in the course of testifying that he had been an employee during the relevant time periods. *See, e. g.,* Record, vol. 5 at 115, 116, 128, 131, 136, 153–154, 196–197. Almost all of the prosecution witnesses also indicated that Herzog had been employed and that he had given the tax withholding forms to his employers. *See, e. g., Id.,* vol. 4 at 61, 66, 70, 85. There is not a smidgeon of evidence suggesting that Herzog was *not* an employee at the relevant times. As in the *Olar* case, it was so clear that the Government had met its burden of proof on the essential element that was omitted from the jury charge that "[d]efense counsel evidently either overlooked the omission or regarded it as of no moment . . . ." 391 F.2d at 775.

We have no doubt that the trial court's failure to submit to the jury this undisputed issue, which Herzog himself had plainly conceded, could not possibly have resulted in prejudice to any of Herzog's rights. Therefore, we must conclude that the jury instructions were not infected with the "plain error" that would require reversal of the conviction.

### III.

■ We now consider Herzog's contention that the trial court erred in excluding

the testimony of Herzog's expert witness. Besides admitting that he was "an individual required to supply information to his employer under section 3402," Herzog also failed to contest the prosecution's evidence that he had submitted the W–4 and W–4(e) forms described in the indictment and that the forms contained false information. He based his defense entirely on the issue of intent, arguing that he had not acted with the willfulness that is an essential element of the crime. Brief for Martin Herzog at 17; Record, vol. 5, at 140–50. The critical issue in the case was thus a factual one for the jury: whether it was true that Herzog had filed the improper forms under an honest, although undoubtedly erroneous, belief that his wages were exempt from taxation.

The defense asserts in its brief that its sole purpose in calling Dr. David Goshien, a law professor, as a witness was to buttress Herzog's contention that he had not acted "willfully" when he filed the improper withholding forms. Brief for Martin Herzog at 17. Defense counsel asked Goshien whether he had an opinion about the complexity of the income tax laws in the United States, whether his students found the tax law complex, and whether there existed any literature concerning the complexity of tax law. The Government objected to each of these questions on relevancy grounds, and the court sustained the objections. Record, vol. 5, at 211–218. The defense then made a proffer of Goshien's testimony in the absence of the jury. Goshien stated his opinion that the tax laws are complex and that even law students, law professors, and attorneys find the subject very difficult. *Id.* at 221. The court rejected this proffer. After the jury had returned, the defense continued the direct examination, asking Goshien to explain the equal exchange theory, to give his opinion about Herzog's conception of the theory, and to state his interpretation of the sixteenth amendment. The court sustained relevancy objections to each of these questions. *Id.* at 222–227.

None of the questions concerning Goshien's view of the tax laws could be relevant to the willfulness issue, the court reasoned, since Goshien's opinion that the laws are complex could not shed any light on whether *Herzog* had been confused by any such complexity at the time he submitted the withholding forms. And since Herzog was not an attorney, a law professor, or one of Goshien's students, those persons' comprehension of the tax laws could not have any bearing on Herzog's intent. Not even Goshien's impression of Herzog's understanding of the tax laws that Goshien had derived from conversations with Herzog could be relevant, the court ruled, because the conversations had taken place not during the time period when Herzog had submitted the withholding forms, but long afterward, in preparation for trial.

The exclusion of the proffered testimony of the expert, Goshien, was eminently correct. The basis of the charge against the appellant was that he falsified the number of exemptions that he had and that he stated that he was exempt from taxes.

This court en banc, in *United States v. Garber*, 607 F.2d 92 (5th Cir. 1979), reversed a conviction because an expert was not allowed to testify. The defense in that case argued that the testimony of the expert was "to show that doubt existed as to whether a tax was due because it was incapable of being computed, and to demonstrate the vagueness of the law, which would preclude a willful intent to violate it." The appellant in this case is not being accused of failing to report something that he received as income; he is charged with filing false exemption forms, and no amount of expert testimony could help him in this regard. He was allowed by the court below to give his reasons why he did what he did, which amply presented his defense before the jury that tried him. The rationale of *Garber* is of no help to the appellant.

IV.

We have examined the other contentions of error of the appellant and find them all to be without merit. The conviction below must, therefore, be

AFFIRMED.

TJOFLAT, Circuit Judge, concurring in part and dissenting in part:

Martin Herzog was convicted on four counts of supplying false or fraudulent information on income tax withholding exemption certificates in violation of Internal Revenue Code section 7205. In pertinent part, section 7205 provides a penalty for "[a]ny individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information . . . ." I.R.C. § 7205. Two counts of Herzog's indictment concern the willfully fraudulent preparation and submission of W–4 forms to Herzog's employer; Herzog had claimed ninety–nine exemptions on those forms. Record, vol. 1 at 1. These acts allegedly violated Internal Revenue Code section 3402(f)(2)(A), which provides:

On or before the date of the commencement of employment with an employer, the employee shall furnish the employer with a signed withholding exemption certificate relating to the number of withholding exemptions which he claims, which shall in no event exceed the number to which he is entitled.

The other two counts of Herzog's indictment allege a willfully fraudulent preparation of W–4E forms, also submitted to Herzog's employer. Record, vol. 1 at 1. These forms provide for total exemption from withholding of federal income tax upon an employee's declaration that he neither incurred tax liability in the preceding year nor anticipates incurring tax liability for the current year:

Notwithstanding any other provision of this section, an employer shall not be required to deduct and withhold any tax under this chapter upon a payment of wages to an employee if there is in effect with respect to such payment a withholding exemption certificate . . . furnished to the employer by the employee certifying that the employee—

(1) incurred no liability for income tax imposed under subtitle A for his preceding taxable year, and

(2) anticipates that he will incur no liability for income tax imposed under subtitle A for his current taxable year. I.R.C. § 3402(n).

I fully concur in the majority's reasoning concerning Herzog's conviction for willfully fraudulent preparation of W–4 forms, but I am forced reluctantly to dissent to upholding Herzog's conviction for fraudulent preparation of W–4E forms.

This appeal concerns the admissibility of certain testimony allegedly relevant to the issue of intent. Herzog has maintained that he did not willfully violate the provisions of section 3402 because he honestly believed that his wages did not constitute income for tax purposes, and thus were not subject to federal taxation. Herzog purportedly reached this conclusion through extensive study of the law of federal income taxation, which led him to embrace the "equal exchange theory" of income. This theory, he asserts, precludes the taxation of wages.

Herzog contends that the trial court erred in excluding the testimony of his expert witness. Herzog offered the testimony of Dr. David Goshien, a professor of tax law, to bolster his claim that he lacked willfulness. Herzog wished to question Dr. Goshien about the equal exchange theory and the complexity of the tax laws; through this testimony, he hoped to substantiate the reasonableness of his conclusions about the "equal exchange theory." The trial court sustained relevancy objections to the presentation of this testimony.

*United States v. Garber*, 607 F.2d 92 (5th Cir. 1979), (en banc), presented an appeal closely akin to Herzog's. In *Garber*, a taxpayer appealed from a conviction for willfully evading federal tax liability. The taxpayer, Dorothy Garber, had failed to report income she received from selling her blood plasma. Her defense to the charge was that she had not willfully misstated her income; any misstatement was due solely to a *bona fide* belief that "because she was selling a part of her body the money received was not taxable." *Id.* at 96 n.3. To support her claim that she lacked the requi-

site intent, Garber proffered the expert testimony of a tax accountant who also believed that the sales were not taxable. Although Garber had not consulted this expert in relation to preparing her tax forms, the defense nevertheless argued that this testimony should be presented to the jury because it revealed sufficient doubt concerning the taxability of Garber's receipts to preclude a finding of willful intent. The trial court excluded the testimony, but this circuit reversed, concluding:

> In a case such as this where the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent.... The defendant testified that she subjectively thought that proceeds from the sale of part of her body were not taxable. By disallowing [expert] testimony that a recognized theory of tax law supports Garber's feelings, *the court deprived the defendant of evidence showing her state of mind to be reasonable.*

*Id.* at 99 (emphasis added). *See also id.* at 97.

The testimony of Herzog's expert was surely irrelevant to the charge that he intended to prepare his W–4 forms fraudulently. Dr. Goshien was not going to testify that it was reasonable for Herzog to believe himself entitled to ninety–nine exemptions, or that it was reasonable for Herzog to believe that he legitimately could avoid taxation by falsely declaring tax exemptions. The two counts involving W–4 forms simply charged that Herzog willfully declared an entitlement to ninety–nine exemptions when he knew that he was not so entitled. Nothing the defense offered about Dr. Goshien's testimony could have been construed as relevant to Herzog's willfulness on this question, and thus the majority rightfully holds that *Garber* is inapplicable.

The expert testimony, however, was, under *Garber*, quite relevant to the reasonableness of Herzog's W–4E declarations that he was exempt from tax. Thus *Garber*

requires that it be admitted as probative of Herzog's requisite intent under section 7205. At trial, Herzog testified that before February of 1976 he believed his wages were not taxable under the Internal Revenue Code. Record, vol. V at 174. This indicates that Herzog may have concluded that he had not, under subtitle A of the Code, incurred tax liability on his wages in the preceding tax year and that he also would not incur tax liability in his then current tax year. Arguably, it was these beliefs that Herzog declared on his W–4E forms. Under *Garber*, Dr. Goshien's testimony concerning the theory supposedly underlying Herzog's declarations was relevant to the reasonableness of Herzog's beliefs and, thus, probative of his lack of intent. Moreover, under *Garber* it is irrelevant that Herzog had never consulted Dr. Goshien, or even discussed his theories of tax law with him prior to this action. *Garber*, 607 F.2d at 96, 98–99. The expert testimony is still relevant because it is supposedly probative of the *reasonableness* of Herzog's beliefs. *Id.* at 99. Consequently, I would remand this case for retrial of Herzog's conviction for fraudulently preparing W–4E forms.

I must emphasize that I reach the result of this dissent quite reluctantly, especially in light of Mr. Herzog's apparent guilt. The reasoning of *Garber*, in my view, is sophistic, *see United States v. Garber*, 607 F.2d 92 at 109–116 (5th Cir. 1979) (en banc) (Tjoflat, J., dissenting); I urge following it here simply because I believe the weight of precedent too compelling to disregard.