**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Keith HENSEL and Timothy D. Leonard, Defendants-Appellants.**

No. 82–5182.

United States Court of Appeals,
Eleventh Circuit.

Aug. 12, 1983.

Mark J. Kadish, Atlanta, Ga., for Timothy D. Leonard.

Theodore M. Lieverman, Judith Brown Chomsky, Philadelphia, Pa., for Hensel.

Stanley Marcus, U.S. Atty., Michael B. Cohen, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE *, District Judge.

KRAVITCH, Circuit Judge:

Appellants were convicted by a jury both for conspiracy to possess and possession of marijuana with intent to distribute, 21 U.S.C. §§ 955a(a) and 955c, and for setting their vessel afire, in violation of 18 U.S.C. § 2275. Both appellants raise numerous issues on appeal. Because we find no merit to appellants' claims, we affirm.

## I. Background

While on a routine surveillance patrol in the Gulf of Mexico, the helicopter pilot from the Coast Guard Cutter DEPENDABLE sighted a shrimping vessel on the stern of which was printed PATSY ANN, home port Key West, Florida. The DEPENDABLE steered a course to intercept the shrimper and sighted it two hours later. When it was one and a half miles away, at 9:55 p.m., Coast Guard Commander Fenton illuminated the DEPENDABLE'S American flag and Coast Guard racing stripes and attempted unsuccessfully to raise the PATSY ANN on the radio. At this point the Commander, using his binoculars, noticed the PATSY ANN was on fire.

Although the testimony of the Coast Guardsmen aboard the DEPENDABLE differed as to exactly how they believed the fire began, several guardsmen testified that they saw two men on board, and that they seemed to be making motions with a can and igniting device shortly before the fire broke out. The two men were then seen abandoning ship into a small aluminum skiff. Commander Fenton ordered his men to extinguish the fire and rescue the men in the skiff.

Fenton, standing in the stern of the DEPENDABLE, observed bales in the hold and in the area of the deck house of the PATSY ANN. Subsequent tests revealed the PATSY ANN contained 20,000 pounds of marijuana.

At approximately 11:20 p.m. Ensign Baumgartner boarded the PATSY ANN. He observed a red plastic can lying next to the hatch of the main hold. At trial Baumgartner identified a red "jerry can" which he recovered from the PATSY ANN and on which he had carved his initials.

Subsequent to being towed into port by the DEPENDABLE, the PATSY ANN was inspected by fire investigator John Gilbert. At trial Gilbert stated he was of the opinion there were two separate fires on the PATSY ANN, one in the forward section of the ship and one in the rear. He also opined that the fires were set deliberately.

## II. The Constitutionality of 21 U.S.C. §§ 955a(a) and 955c

Appellants contend initially that the statutes under which they were convicted for conspiracy to possess marijuana with intent to distribute, and possession with intent to distribute, are unconstitutional. The basis of the allegation is that the statutes do not require any showing that the criminal activity will have an effect upon the United States. Appellants argue further that an assertion of jurisdiction by the United States over vessels in international waters, without a showing of effect upon the United States is a violation of international law.

▪ Both claims were disposed of by this court in *United States v. Marino-Garcia,* 679 F.2d 1373 (11th Cir.1982), where we held

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

that § 955a "properly extends the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." *Id.* at 1383. We further held international law did not restrict the right of the United States to assert jurisdiction over stateless vessels on the high seas. *Id.* The PATSY ANN is a vessel of American registry; she was found on the high seas. *A fortiori,* this would apply to a vessel of the United States.[1] *See United States v. Del Sol,* 679 F.2d 216 (11th Cir.1982) (Congress intends to assert jurisdiction over extraterritorial acts of American vessels under international "law of the flag").

Appellants contend, however, that the law is overbroad, in that it could encompass foreign vessels, outside the jurisdiction of the United States, and that a criminal defendant may not be convicted under a law which is so overbroad it criminalizes conduct which is constitutionally protected. *See Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). This argument is specious. The only "protected" conduct appellants offer as unlawfully encompassed within the statute is the right of a foreign national to carry controlled substances on a foreign vessel to a country that does not proscribe possession of such substances. While such conduct may be outside the reach of our Congress, the right to engage in such conduct is not "protected" by our Constitution. The *Grayned* case, cited by appellants, is premised on the fact that overbroad statutes may inhibit constitutionally protected rights. That rationale is wholly inapplicable here.

### III. Claims under 18 U.S.C. § 2275

Appellants were convicted of violating 18 U.S.C. § 2275. That section provides, in pertinent part:

Whoever sets fire to any vessel of foreign registry, or any vessel of American registry entitled to engage in commerce with foreign nations, or to any vessel of the United States, ... while within the jurisdiction of the United States, or, if such vessel is of American registry, while she is on the high sea, with intent to injure or endanger the safety of the vessel or of her cargo, ... and whoever attempts to do so shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

In attacking their conviction under this statute, appellants first advance an argument similar to that raised concerning 21 U.S.C. § 955a(a), i.e., that the statute provides an overly broad definition of vessels subject to the jurisdiction of the United States. This statute criminalizes attempts to injure, or the act of injuring, any vessel while within the jurisdiction of the United States. The threatened or actual harm to the United States under those circumstances is clear, and requires no further discussion. The statute also criminalizes similar conduct on vessels of American registry while on the high seas. The fact that the statute limits criminalization of conduct injurious to vessels of American registry makes clear the harm perceived by Congress. In *Marchese v. United States,* 126 F.2d 671, 675 (5th Cir.1942),[2] we discussed the validity of Congress' concern to protect vessels of the United States:

The statute before us was not made to protect ship owners against the acts of others, but to protect the public interest in ships as vehicles of foreign commerce, with their cargoes and persons on board, against injury or danger by the acts of any person, whether owner, crew, or outsider.

*Id.* The statute does not, therefore, attempt to criminalize conduct without any

---

1. Appellants contend as well that it was error for the trial judge not to give an instruction requiring the jury to find that defendants possessed intent to distribute a controlled substance within the United States. In light of our holding in *Marino-Garcia,* this claim too is without merit.

2. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

showing of harm threatened or caused to the United States.

■ Second, appellants argue the statute amounts to an unconstitutional taking of private property without due process of law; in that the statute forbids an owner from towing his ship out to sea, as may be his wont, and burning it. Appellants contend this statutory prohibition interferes with protected property interests.

This argument was acknowledged and rejected over forty years ago. *See Marchese, supra,* 126 F.2d at 676 (5th Cir.1942); *Guigni v. United States,* 127 F.2d 786, 791 (1st Cir.1942). In *Marchese* we stated:

> The Act is a reasonable preservation of property. It does not take it. It does limit an owner's right to injure or destroy his property, but since the limitation is made in the public interest there is no such arbitrariness as to constitute a want of due process.

*Id.* at 676. Appellants argue, however, that cases in the intervening forty years redefine a "property interest" in so broad a manner as to encompass the burning of one's own vessel. We find this argument unpersuasive. The "new property" described by appellants relates to societal entitlements, not to destruction of tangible property. *See generally,* Reich, The New Property, 73 Yale L.J. 733, 734–37 (1964). None of the cases cited by appellants support the proposition that Congress may not forbid the destruction of one's own property once Congress has determined that the preservation of that property is in the national interest.

■ Next, appellants contend there was insufficient evidence to support their conviction under the statute, because the statute requires a nexus to foreign commerce. The argument strains credulity. When the Coast Guard seized the PATSY ANN, it was carrying what was later estimated to be 20,000 pounds of marijuana. As stated in *United States v. Bryant,* 671 F.2d 450, 454 (11th Cir.1982):

> We hold, therefore, that § 2275 at least encompasses any vessel engaged in, or capable of being used in, commerce

whether or not the vessel was designed and/or registered as a commercial ship. We also conclude that, in light of appellant Bryant's testimony that he, Alvarez, and Cagnina had accepted an offer to transport some 3,000 pounds of marijuana from Jamaica to Abaco Island for profit, the SCHERZO was in fact engaged in commerce at the time of the acts in question and was subject to the protection of § 2275.

It is difficult to imagine appellants were carrying 20,000 pounds of marijuana for non-commercial purposes. The sufficiency of the evidence introduced at trial follows *a fortiori* from our decision in *Bryant.*

Finally, appellants argue that their convictions must be overturned under the plain error rule, because the trial judge failed to charge on an essential element of the crime, that there be a nexus between the vessel injured and foreign commerce. Relying on *United States v. Musgrave,* 444 F.2d 755 (5th Cir.1971), appellants assert that any failure to charge on an essential element of the crime constitutes plain error. In *Musgrave* we observed:

> Just as an indictment which omits an essential element of the crime charged must be dismissed as fatally defective, the trial judge's failure here to instruct the jury on all the essential elements of the crimes in counts two and four, even though not requested, was plain error.

*Id.* at 764.

■ Appellants ignore subsequent decisions of this court. In *United States v. Herzog,* 632 F.2d 469 (5th Cir.1980), we discussed whether the trial court's failure to submit to the jury the issue of whether Herzog was an "employee," an element of the crime, was plain error. We concluded:

> We have no doubt that the trial court's failure to submit to the jury this undisputed issue, which Herzog himself had plainly conceded, could not possibly have resulted in prejudice to any of Herzog's rights. Therefore, we must conclude that the jury instructions were not infected with the "plain error" that would require reversal of this conviction.

*Id.* at 472. Further, in *United States v. Bosch,* 505 F.2d 78, 82–83 (5th Cir.1974), we stated:

> When an after the fact review of the entire transcript discloses that . . . no prejudice to the defendant's rights could have resulted from narrowing the jury's ambit . . . , a plain error reversal of [the trial court's omission of an essential element of the defense from the jury charge] is not required.

*Id.* at 82–83. As the *Herzog* and *Bosch* courts noted, and as we reiterate, *Musgrave* does not hold that every failure to charge on all the essential elements of the crime results in plain error. When it is clear an element was not in dispute, and the transcript of the trial indicates sufficient evidence that the element was met, no prejudice results from the failure to remove the undisputed element from the jury.

■ Here appellants have not alleged that the 20,000 pounds of marijuana aboard the PATSY ANN was for their own use; accordingly, under *United States v. Bryant, supra,* 671 F.2d at 454, the commerce nexus, not disputed at trial, clearly was met. Hence, no prejudice resulted from the failure of the trial court to charge on a commerce nexus.

### IV. Remaining Claims

Appellants raise four additional claims: (1) that a photograph of the PATSY ANN, showing the red jerry can amidst the fire damage, was excluded from evidence by the trial judge, but found its way into the jury room; (2) that the trial judge impermissibly admitted the jerry can, and its odor, into evidence; (3) that the prosecutor commented on a fact not in evidence in closing argument, and (4) that the trial judge erred in qualifying Lieutenant John Gilbert as an admiralty arson expert. After examining the record we find these contentions all without merit. We therefore comment on them only briefly.

■ As to the photograph, the governing standard is that the defendant is entitled to a new trial unless there is "no reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." *Llewellyn v. Stynchcombe,* 609 F.2d 194, 195 (5th Cir.1980). *See also Farese v. United States,* 428 F.2d 178, 180 (5th Cir.1970). We are convinced the government has met its burden of showing any possible prejudice was harmless, *United States v. Howard,* 506 F.2d 865, 869 (5th Cir.1975). The picture showed the red jerry can amidst some of the fire damage aboard the PATSY ANN. The can itself properly was admitted into evidence, *see infra,* and the jury was aware the can was found on the PATSY ANN. The weight of other evidence of appellants' culpability for the fire is substantial enough that one photograph could hardly have influenced the jury's verdict.

Next, there is the issue of the jerry can and its odor. During trial the jerry can was admitted without objection. During the government's closing argument the following colloquy occurred:

> [Mr. Deland] said when the fire was brought under control he and Mr. Wood went on board the *Patsy Ann* to extinguish the fire. If you remember at that time he told you about a two gallon gas tank, two gallon jerry can, and it was red. It looked like this. He smelled that can and when he smelled it, he said it contained the smell of gasoline.
>
> I ask that you pay particular attention to that testimony, and also I would to you you [sic] can take these exhibits back into the jury room with you, smell it, put your nose next to it.
>
> MR. AVERY: I object to that.
>
> THE COURT: Overruled.
>
> MR. COHEN: Put your nose next to the nozzle of this can and smell it and see what you smell. This is the credibility of the witnesses. You apply your own good sense and senses. (Tr. at 672–673).

■ Since it was made during closing argument, any objection to the can's admissibility was untimely. The can already had been admitted. At most, the objection can be interpreted as an objection to the comment of the prosecutor during closing argument. We see nothing improper in the prosecutor's comment, however, and appel-

lants provide no suggestion. Accordingly, this claim, too, is without merit.

 Also during closing argument the prosecutor argued that 20,000 pounds of marijuana would give off a discernible odor. Appellants cite this as error, because the prosecutor argued a fact not in evidence. Defense counsel made no objection to the prosecutor's comment. Even assuming this was error, however, it was harmless in light of the overwhelming evidence of guilt. *United States v. Bell,* 535 F.2d 886, 888 (5th Cir.1976).

Finally, we resolve the expert witness claim. The government's final witness was Lieutenant John Gilbert of the Miami City Fire Department. Over defense counsel's objection the trial judge qualified Mr. Gilbert as an expert witness.

 The decision to qualify an expert rests within the sound discretion of the trial judge. *United States v. Johnson,* 575 F.2d 1347, 1360–61 (5th Cir.1978). Appellants' primary claim is that although Gilbert had experience investigating fires, the experience was limited insofar as admiralty arson was concerned, and therefore Gilbert's testimony was more likely to confuse than to assist the jury. Despite Gilbert's alleged shortcomings in the admiralty area, the facts are that Gilbert had investigated over 1,000 fires in the City of Miami in the last four years, two dozen of which were aboard ship. Further, Gilbert had attended numerous courses and workshops on arson investigation, and at the time of trial was a member of several professional organizations.

We find no abuse of discretion in the trial court qualifying Lieutenant Gilbert as an expert. *Johnson, supra,* 575 F.2d at 1361. Gilbert's qualifications were sufficient to sustain his expert qualification. Moreover, defense counsel was not precluded from introducing his own expert to contradict Gilbert's testimony.

### V. Conclusion

Finding no merit to any of appellants' claims, we AFFIRM.